IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| LEONARD S. EMBODY, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:10-cv-00126 |
| | ) | JURY DEMAND |
| V. | ) | |
| | ) | JUDGE HAYNES |
| STEVE WARD, individually, | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF MATERIAL FACTS IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT
BY DEFENDANT STEVE WARD**

In support of his motion for summary judgment, defendant Steve Ward submits the following statement of materials facts.

1. On Sunday afternoon, December 20, 2009, Leonard Embody entered Radnor Lake State Natural area ("Radnor Lake"), and proceeded to walk the trails, while dressed in camouflage, and while wearing an AK-47 in a sling. (Deposition of Leonard Embody, pp. 36-40, 46-48, 82).

    RESPONSE:

2. Leonard Embody's weapon that day had an orange-colored barrel nut. (Deposition of Leonard Embody, pp. 33-34).

    RESPONSE:

3. Embody had painted the barrel nut of the weapon orange sometime between December 16, 2009 and December 20, 2009. (Deposition of Leonard Embody, p. 34).

   RESPONSE:

4. Park Ranger Joshua Walsh encountered Embody with what appeared to be an AK-47, but Walsh was not sure it was real because of the orange barrel tip. (Deposition of Joshua Walsh, pp. 4-5, 7; Deposition of Leonard Embody, pp. 60, 79-80).

   RESPONSE:

5. Leonard Embody told Walsh and a passerby that the weapon was an AK-47. (Deposition of Leonard Embody, Exhibit 5, recording).

   RESPONSE:

2

6. Leonard Embody's weapon was fully loaded with 30 rounds in the magazine and a round in the chamber. (Deposition of Leonard Embody, p. 35).

RESPONSE:

7. Leonard Embody anticipated that a ranger would stop him and ask him about the weapon. (Deposition of Leonard Embody, p. 59).

RESPONSE:

8. Ranger Walsh stated, "Technically it's a handgun, but I don't know why you need it out here." Shortly after that, Ranger Ward stated to Embody, "I'm pretty sure an AK-47 is not a handgun." (Deposition of Joshua Walsh, pp. 5, 14).

RESPONSE:

3

9. Embody recorded his discussion with Walsh. (Deposition of Leonard Embody, p. 56, and Exhibit 5, recording).

   RESPONSE:

10. During the discussion between Embody and Walsh, a visitor walking by held up his hands, got to the side of the road, and asked if it was a real weapon. (Deposition of Joshua Walsh, p. 6).

    RESPONSE:

11. To Joshua Walsh, the visitor was not joking. (Deposition of Joshua Walsh, p. 6).

    RESPONSE:

12. As Walsh was following Embody, two to four visitors asked Walsh if he saw the man with the weapon, and they were very concerned. (Deposition of Joshua Walsh, p. 15).

    RESPONSE:

13. Walsh called his supervisor, Ranger Steve Ward, at home with information that there was a man on the trail with a weapon he claims is a handgun, but, to Walsh, appeared to be an AK-47, that Walsh thought it was an airsoft (toy) gun, that the tip of the barrel was painted orange, but that the man stated was real and that it was an AK-47. (Deposition of Joshua Walsh, p. 7; Deposition of Steve Ward, pp. 5, 9, 11, 22).

    RESPONSE:

14. It was standard operating procedure at Radnor Lake to call an off-duty ranger at home only if there is an emergency. (Deposition of Steve Ward, p. 23).

    RESPONSE:

5

15. When Walsh called Ward, Ward could tell by the tone of Walsh's voice that he was very concerned. (Deposition of Steve Ward, p. 21).

    RESPONSE:

16. While Ward was talking with Walsh, an elderly couple was beating on the door of Ward's house, to tell him there was a man on the road with an assault rifle.

    RESPONSE:

17. Range Ward instructed Walsh to back off and disengage, and to call the police. (Deposition of Joshua Walsh, pp. 8-9; Deposition of Steve Ward, pp. 12, 27).

    RESPONSE:

18. Walsh then followed Embody as Embody continued walking, and Walsh kept Ward updated by phone about where Embody was headed and what he was doing. (Deposition of Joshua Walsh, pp. 7-8; Deposition of Steve Ward, p. 25).

    RESPONSE:

19. Steve Ward's priority was to get to Ranger Walsh. (Deposition of Steve Ward, p. 16).

    RESPONSE:

20. Ward notified his supervisor to make him aware of the situation, to tell him what Ward thought they might be involved in.

    RESPONSE:

21. Tennessee State Parks Chief Park Ranger Shane Petty is Ranger Ward's immediate supervisor. (Affidavit of Shane Petty, ¶ 3).

7

RESPONSE:




22. On the afternoon of December 20, 2009, Petty received a call from Ward that Ranger Joshua Walsh had called Ward about an encounter Walsh had with a man walking through Radnor Lake wearing camouflage clothing, and carrying an AK-47 with the barrel tip painted orange. (Affidavit of Shane Petty, ¶ 4).

RESPONSE:




23. From the description of the weapon, Petty did not believe it was a valid handgun. (Affidavit of Shane Petty, ¶ 5).

RESPONSE:

8

24. Petty with Ward determined that Ward should perform a felony take down of the man and that Ward should initiate the stop by directing his weapon at the man. (Affidavit of Shane Petty, ¶ 6).

RESPONSE:

25. After speaking with Ward, Petty called his superior, Assistant Commissioner Michael Carlton, to advise him on the situation and plan of action. (Affidavit of Shane Petty, ¶ 7).

RESPONSE:

26. When Steve Ward pulled into the west parking lot at Radnor Lake, he saw Embody with a weapon on his chest. (Deposition of Steve Ward, pp. 13-14).

RESPONSE:

27. Leonard Embody was near his car, but Ward was not aware that Embody was getting in anything; he saw Embody standing out in the parking lot. (Deposition of Steve Ward, p. 14).

RESPONSE:

28. With a shotgun pointed at Embody, Ward told him to put his hands up, and then to put the weapon on the ground. (Deposition of Steve Ward, p. 28).

RESPONSE:

29. Ward then instructed Embody to lie down on the ground, while Ward checked him for any other weapons. (Deposition of Steve Ward, pp. 28-29).

RESPONSE:

30. After Ward patted down Embody, Ward allowed him to stand up. (Deposition of Leonard Embody, p. 62).

RESPONSE:

31. Ward did not handcuff Embody. (Deposition of Leonard Embody, pp. 86-87; Requests for Admission to Plaintiff).

RESPONSE:

32. Ranger Ward allowed Embody to keep his cell phone and to make cell phone calls. (Deposition of Leonard Embody, p. 62).

RESPONSE:

33. Ward testified that he never placed Embody under arrest. (Deposition of Steve Ward, pp. 32, 36).

RESPONSE:

34. To Embody's knowledge, Ward never told any other police officer to arrest Embody. (Deposition of Leonard Embody, p. 73).

    RESPONSE:

35. Embody had come to Radnor Lake twice in the fall of 2009, carrying a Smith & Wesson revolver in a holster. (Deposition of Leonard Embody, p. 43).

    RESPONSE:

36. During one of those visits, Ranger Ward asked to see his handgun permit. After he reviewed it, Ward returned the permit to Embody, talked with him briefly, and walked away. (Deposition of Leonard Embody, pp. 44-45).

    RESPONSE:

12

37. On December 20, 2009, Ward did not realize it was Embody at first. (Deposition of Steve Ward, pp. 26).

RESPONSE:

38. Officers from the Metropolitan Nashville Police Department ("Metro Police") arrived as Ward was patting down Embody. (Deposition of Steve Ward, p. 34).

RESPONSE:

39. Both the Metro Police and the Park Rangers have law enforcement jurisdiction over Radnor Lake. (Deposition of Steve Ward, pp. 36, 37).

RESPONSE:

13

40. The Metro Police have technological capabilities for running a weapon that the State Park Rangers do not have. (Deposition of Steve Ward, p. 35).

RESPONSE:

41. Both Ward and the Metro Police Department were the investigating officers. (Deposition of Steve Ward, p. 37).

RESPONSE:

42. Ward testified he was concerned at the time that Embody's weapon was illegal. (Deposition of Steve Ward, pp. 38, 46).

RESPONSE:

44. Ward told Embody they were going to need to figure out whether the weapon was legal, and that Embody would need to wait. (Deposition of Steve Ward, p. 32).

RESPONSE:

45. Ward took photographs of Embody's weapon, sling, and ammunition on December 20, 2009. He took photographs of the weapon, ammunition, sling, and Embody's camouflage jacket on October 29, 2010. (Affidavit of Steve Ward and exhibits).

RESPONSE:

46. The stop on December 20, 2009 lasted 2 ½ hours, from around 4:30 p.m. to around 7:00 p.m. (Deposition of Steve Ward, p. 44).

RESPONSE:

47. Embody later filed a complaint with the Metro Police Department, and that agency conducted an internal review of the events of his stop. (Affidavit of Lt. Natalie K. Lokey, custodian of records, Metro Police Department and attached information and disposition, hereinafter "Police Complaint Investigation").

RESPONSE:

48. The Metro Police Complaint Investigation included statements and supplemental statements of the police officers involved in the stop, along with a sequence of events from the arrival of the officers to the time when Embody was released to go. (Affidavit of Lt. Natalie K. Lokey, custodian of records, Metro Police Department and attached Police Complaint Investigation).

RESPONSE:

49. The ATF advised the Metro Police that Embody's weapon was manufactured as a pistol, and met federal requirements for a pistol/handgun. (Affidavit of Lt. Natalie K. Lokey, custodian of records, Metro Police Department and attached Police Complaint Investigation).

RESPONSE:

50. After the Metro Police received this information from the ATF, Ward went to his vehicle and got Embody's weapon so it could be returned to him. (Deposition of Steve Ward, p. 45).

RESPONSE:

51. The Metro Police Complaint Investigation concluded that Embody's complaint about his detention was "exonerated," that is, the incident did occur, but the action of the police was consistent with established policy, rules, and procedure. (Affidavit of Lt. Natalie K. Lokey, custodian of records, Metro Police Department and attached Police Complaint Investigation: Supplemental Report of Lt. Shawn Parris).

RESPONSE:

52. After Embody filed a complaint about his detention with the Tennessee Department of Environment and Conservation, Assistant Commissioner Michael Carlton concluded that the complaint was unfounded. (Affidavit of Michael Carlton, and exhibit, Customer Complaint and Review of Complaint).

RESPONSE:

53. Assistant Commissioner Carlton further found that Ward had probable cause to believe that Embody was in violation of Tenn. Code Ann. § 39-17-1307 for illegal possession of a weapon, due to the fact that it appeared that he was carrying an AK-47 semi-automatic rifle that had been altered to resemble a toy for unknown reasons. (Affidavit of Michael Carlton, and exhibit, Customer Complaint and Review of Complaint).

RESPONSE:

54. The Expert Report of William T. (Tom) Long has been previously furnished to the plaintiff.

RESPONSE:

Respectfully submitted,

ROBERT E. COOPER, JR., BPR # 010934
Attorney General and Reporter

s/Mary M. Bers
MARY M. BERS, BPR # 013159
Senior Counsel

s. Dawn M. Jordan
DAWN M. JORDAN, BPR # 20383
Senior Counsel
Office of the Attorney General
P. O. Box 20207
Nashville, Tennessee 37202-0207
(615) 741-1845

CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November, 2010, a copy of the foregoing was filed electronically to Phillip L. Davidson, 2400 Crestmoor Road, Suite 107, Nashville, TN 37215. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Copies will be served by the Court's electronic filing service on the following counsel of record:

s/ Mary M. Bers