UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LEONARD S. EMBODY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:10-cv-126 |
| | ) | JUDGE HAYNES |
| STEVE WARD, individually, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE WHICH PRECLUDE SUMMARY JUDGMENT

In support of his position that summary judgment should be denied, the Plaintiff submits the following statement of material facts which are in dispute.

1. Park Ranger, Joshua A. Walsh, knew that the weapon Leonard Embody was carrying on December 20th, 2009, was a handgun. (Depo. Walsh, p. 5)

RESPONSE:


2. On December 20th, 2009, Walsh was familiar with the applicable Tennessee statutes covering a citizen's right to carry a handgun in a State park. (Depo. Walsh, p. 5)

RESPONSE:

3. Walsh knew at the time he encountered Embody at Radnor Lake Park and while he monitored him on the trail that Embody was not threatening anyone. (Depo. Walsh, p. 5)

RESPONSE:

4. At no time during the encounter did Walsh feel threatened. (Depo. Walsh, p. 6)

RESPONSE:

5. Walsh determined that Embody had a permit to carry the weapon. (Depo. Walsh, pp. 7-8)

RESPONSE:

6. Walsh stayed with Embody the whole time he was in the park. (Depo. Walsh, p. 7)

RESPONSE:

7. Walsh communicated with Ranger Steve Ward several times during the whole incident. (Depo. Walsh, pp. 7-8)

RESPONSE:

8. At no time was Embody ever confrontational. (Depo. Walsh, p. 7)

RESPONSE:

9. At the time of this incident, Ranger Steve Ward was trained to know Tennessee law regarding handguns including a citizen's right to carry a handgun in a State park. (Depo. Ward, p. 6)

RESPONSE:

10. Ward had met Mr. Embody prior to December 20th, 2009. At this previous encounter Ward had determined Embody had a handgun permit and was aware at the time he encountered Embody that he had a legal handgun permit. (Depo. Ward, p. 8)

RESPONSE:

11. Ranger Walsh had informed Ward about his previous encounter with Embody that day. (Depo. Ward, p. 11)

RESPONSE:

12. Prior to his encountering Embody, Ward had received no information from Walsh that Embody was threatening anyone. (Depo. Ward, p. 12)

RESPONSE:




13.     When Ward first approached Embody, Mr. Embody was attempting to get in his car. (Depo. Ward, p. 13, Depo. Embody, p. 61)

RESPONSE:




14.     Ward had encountered Mr. Embody carrying a weapon in the park before.  At this previous encounter Mr. Embody had his children with him.  He also knew Embody had a permit to carry a weapon.  (Depo. Ward, p. 14, Depo. Embody, p. 44)

RESPONSE:




15.     Before encountering Embody on December 20, 2009, Ward was not aware of any danger posed to citizens or Ranger Walsh by Embody.  (Depo. Ward, pp. 16-23)

RESPONSE:




16.     Ward stopped Embody because of citizen safety.  (Depo. Ward, p. 18)

RESPONSE:

17.     Prior to encountering Embody, Ward was informed that the man with Ranger Ward as Mr. Embody.  (Depo. Ward, p. 26)

RESPONSE:

18.     Walsh stopped Embody by pointing a shot gun at him and telling him to put his weapon on the ground.  (Depo. Ward, p. 28)

RESPONSE:

19.     Embody was under arrest during the whole time he was stopped.  (Depo. Ward, p. 32)

RESPONSE:

20.     Ward could have told the Metro Police to leave.  He could have measured the barrel and let Mr. Embody go.  (Depo. Ward, pp. 34-35)

RESPONSE:

21.     At the time of Embody's arrest, Ward disagreed with the law passed by the Legislature. (Depo. Ward, p. 40)

RESPONSE:

22.     On December 20th, 2009, Embody had a legal right to carry the weapon he had in a State park, a Draco AK47 pistol. The weapon he had at the time was a lawful weapon for which he had a valid permit to carry. (Depo. Ward, pp. 44-45)

RESPONSE:

23.     Ranger Ward was the officer who eventually allowed Embody to go free. (Depo. Embody, p. 74)

RESPONSE:

24.     Ranger Ward was the officer who gave Embody his weapon back. (Depo. Embody, p. 74)

RESPONSE:

25.     Mr. Embody was only exercising his right under Tennessee Law to carry a legal weapon and because he was afraid of being assaulted. (Depo. Embody, pp. 75-81)

RESPONSE:

26. Mr. Embody refused to sign a citation in lieu of arrest because he had committed no crime. (Depo. Embody, p. 87)

RESPONSE:

27. After the Metro Police arrived, Embody was compliant and willing to have his weapon seized. (Depo. Ward, p. 34)

RESPONSE:

28. Ward could have taken the weapon to the Park Headquarters and unarmed it. (Depo. Ward, p. 38)

RESPONSE:

Respectfully submitted,

/s/ Phillip L. Davidson
Phillip L. Davidson, #6466
2400 Crestmoor Road
Suite 107
Nashville, Tennessee 37215
(615) 386-7115

**CERTIFICATE OF SERVICE**

  I certify that a copy of the foregoing was delivered by U.S. Mail and/or electronically to

Robert E. Cooper, Jr.
Attorney General and Reporter

Mary M. Bers
Senior Counsel

Dawn M. Jordan
Senior Counsel
PO Box 20207
Nashville, TN 37202-0207

on this date.

                /s/ Phillip L. Davidson
                Phillip L. Davidson