| | | |
|---|---|---|
| LEONARD S. EMBODY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:10-cv-126 |
| | ) | JUDGE HAYNES |
| STEVE WARD, individually, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM BRIEF IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Comes the Plaintiff and would submit to the Court:

### I. FACTS

On December 20, 2009, the Plaintiff Leonard Embody [Embody] came to the Radnor Lake State Park located in Nashville, Tennessee. Mr. Embody had with him a Draco AK-47 pistol. The pistol could be legally carried in Tennessee in a State park and Mr. Embody had a legal permit. (Depo. Embody, pp. 44-45, 75, 81)

At some point during his walk, Embody was stopped by Ranger Joshua A. Walsh [Walsh]. Walsh immediately recognized that the Draco was a handgun. (Depo. Walsh, p. 5) Walsh was familiar with the Tennessee Law governing the carrying of handguns. (Id. p. 5) Walsh testified that at no time did he feel Embody was threatening anyone. (Id. pp. 5-6) Walsh also knew that Embody had a handgun permit. (Id. pp. 7-8) Walsh testified that at no time was Embody confrontive. (Id. p. 11) Walsh stayed with Embody until he was arrested by Ranger Steve Ward [Ward]; and, communicated with Ward constantly about Embody. (Id. pp. 7-8, 11)

At the time of the incident, which is the subject of this lawsuit, Ward was familiar with the Tennessee Law governing the carrying of handguns in State parks. (Depo. Ward, p. 6) Ward disagreed with the law passed by the Tennessee Legislature. (Id. p. 40) Prior to stopping Embody on this date, Ward had previously encountered Embody at Radnor Lake Park. At that time, Embody was carrying a handgun and had his two daughters with him. Ward determined at that time that Embody had a valid permit to carry a handgun. (Id. pp. 8, 44)

After Ward had been notified by Walsh that a man was in the park with a weapon, he learned it was Embody. (Id. pp. 11, 26) Walsh never told Ward that Embody was threatening anyone or acting in any manner that posed a threat to anyone. (Id. pp. 16, 23) Ward testified that he stopped Embody for citizen safety. (Id. p. 18)

Ward confronted Embody in the park's parking lot and he was attempting to get into his parked car; there was no evidence that any citizen was present at the time of the stop. (Depo. Ward, p. 13; Depo Embody, p. 61). Ward stopped Embody by pointing a shotgun at him and telling him to put his handgun on the ground. (Id. p. 32)

Ward then called Metro Police even though he could have measured the length of the Draco himself, then would have been required to let Embody go. (Id. pp. 34-35);

Embody was held for over two hours, while Metro Police were on the scene. He was then given his handgun and let go without any criminal charge. (Depo. Ward, p. 44) Ranger Ward was the officer who released him from custody and gave him back his pistol. (Depo. Embody, p. 74)

2

## II.    LAW OF SUMMARY JUDGMENT

No summary judgment may be granted unless there are no genuine issues of material fact in the record. A material fact is one identified by the substantive law and which affects the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)  The moving party bears the burden of satisfying Rule 56(c) standards. <u>Morton v. Keeley</u>, 803 F.2d 236, 239 (6th Cir. 1986)  The moving party's burden is to show "clearly and convincingly" the absence of any genuine issue of material fact. <u>Sims v. Memphis Processors, Inc.</u>, 926 F.524, 526 (6th Cir. 1991)  If this is done, the non-moving party must then set forth specific facts showing that there is a genuine issue for trial. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 353 (6th Cir. 1989)[1]  The facts and inferences are to be drawn in a light most favorable to the party opposing the motion. <u>Duchon v. Cajon Company</u>, 791 F.2d 43, 46 (6th Cir. 1996)

Respectfully, there are present sufficient genuine issues of material fact in the record to preclude summary judgment.

## III.    FOURTH AMENDMENT LAW AND QUALIFIED IMMUNITY

The Defendant has raised the qualified immunity defense. This done, a Court must first determine whether a constitutional violation has been properly alleged before reaching the issue of qualified immunity. In other words, was there a federal right presented by the Plaintiff. <u>Siegert v. Gilley</u>, 500 U.S. 226, 231 (1991)

Respectfully, the Plaintiff has alleged a federal right. The Fourth Amendment to the United States Constitution prohibits unreasonable seizures. This right has been interpreted to extend beyond simple arrest. The Fourth Amendment applies when a police officer restrains the liberty of a citizen in some way. <u>Terry v. Ohio</u>, 392 U.S. 1, 19 (1968)  A citizen is seized when in view of all of the circumstances surrounding the incident, a reasonable person would have

---

[1] The Plaintiff has filed contemporaneously with this response his own set of disputed material facts.

believed that he was not free to leave. Florida v. Royer, 460 U.S. 491, 502 (1983), United States v. Black, 675 F.2d 129, 135 (7th Cir. 1982) Clearly, the record in this case reveals that Embody was not free to leave the presence of Ward. (Depo. Ward, p. 32) Being that it is established that Embody was seized, the next question to determine is whether the seizure was unreasonable. Brown v. County of Inyo, 489 U.S. 593, 596-97 (1989)

In order to deny that the requirements of qualified immunity had been met, the Plaintiff must first show that the right was clearly established at the time of the incident. Mitchell v. Forsyth, 472 U.S. 511 (1985) Second, the Plaintiff must show that the clearly established right was sufficiently clear that a reasonable official would understand that what he was doing violated that right. Pray v. City of Sandusky, 49 F.3d 1154, 1157 (6th Cir. 1995)[2]

Precedent is not required for all Fourth Amendment claims in order to conclude that the right is clearly established. Immunity from damages does not attach simply because the particular legal requirement has never explicitly held to apply…"in identical circumstances." Mitchell v. Forsyth, 472 U.S. 511, 535 n. 12 (1985)

In looking as to whether a right is clearly established, a Court should look to the highest State Court where the case arose, the Court of Appeals or the United States Supreme Court. Robinson v. Bibb, 840 F.2d 349, 351 (6th Cir. 1988) The Plaintiff in this case is claiming that the Defendnat illegally arrested him. In other words, arresting him without probable cause in violation of his Fourth Amendment rights. The Plaintiff also claims that the Defendant's arrest violated his right to bear arms, in violation of the Second Amendment. (Docket Entry 1) The right to be free from arrest without probable cause has clearly established at the time of Mr. Embody's arrest. Terry v. Ohio, 352 U.S. 1, 19 (1968); Florida v. Royer, 460 U.S. 491 (1983)

---

[2] Although the Plaintiff bears the burden of proof in a qualified immunity defense, the Defendant must still show that there are no genuine issues of material fact in the record that would defeat a claim of qualified immunity. Adams v. Metiva, 31 F.2d 375, 386 (6th Cir. 1994)

The second part of the qualified immunity test is whether the seizure was unreasonable. In other words, should the Defendant have known that his seizure of Embody was unreasonable. In determining this, a Court should utilize an "objective reasonableness" standard, judging would a reasonable officer in the Defendant's position could have believed his conduct was lawful considering the state of the law as it existed when the Defendant took his challenged actions. Lavado v. Keohane, 952 F.2d 601, 606 (6th Cir. 1993)

In determining whether a Plaintiff's Section 1983 action should be dismissed on summary judgment a Court is to evaluate, for the minimal showing of credibility, any evidence that the Defendants did not have probable cause. Yancey v. Carroll County, 876 F.2d 1238, 1243 (6th Cir. 1989)

Probable cause is a practical, non-technical concept that deals with the probability and takes into account the consideration of everyday life on which reasonable and prudent men, not legal technicians, act. Illinois v. Gates, 462 U.S. 213, 231 (1983) This objective standard defines qualified immunity to be accorded law enforcement officers. Malley v. Briggs, 475 U.S. 335, 344 (1988)

A police officer is required to consider the totality of circumstances applying both exculpatory and inculpatory evidence before determining if probable cause exists. Gardenshire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000) In the case at bar the relevant question is whether the Defendant had probable cause to suspect that the Plaintiff had committed, was committing, or was about to commit an offense. Michigan v. Teffilippo, 443 U.S. 31, 37 (1970)

Respectfully, there are genuine issues of material fact in the record as to whether Ranger Ward had probable cause to arrest the Plaintiff, Embody. See Adams, at 386 (6th Cir. 1994)

There existed on December 20, 2009 a law passed by the Tennessee Legislate which allowed persons with handgun permits to carry handguns into State parks and natural areas.[3] Ranger Ward knew this law. It is not unreasonable to expect officers who are charged with the responsibility to enforce the law, to know the law. And, in this particular case Ward knew Embody. He had stopped him previously with his children and knew that he had carried a weapon in the park before, and he knew he had a valid handgun permit. Ranger Walsh also knew Embody had a valid handgun permit and that Embody was carrying a handgun. Ward knew that Mr. Embody was the suspect, and that Embody had not threatened anyone, and was not acting in any confrontational way.[4] In fact, when Ward stopped Embody and pointed a shotgun at him, Embody was attempting to get into his car and leave the park. There was simply no action on the part of Embody that warranted Ward to fear Mr. Embody's actions. In fact, he had been told by Ranger Walsh that Embody was not threatening anyone. The only possible question that could have raised a doubt about the legality of the weapon was its barrel length. Walsh knew the Draco was a handgun. But an inquiry into the length of the barrel did not require the unreasonable reaction of Ward pointing a loaded shotgun at Embody and forcing him to lie on the ground. There was no need to call the MPD to the scene to measure the length of a barrel. If there had been a question about the barrel length it could have been measure using a ruler or tape. At no time did Ward give the MPD a full and complete statement that he knew that

---

[3] 2009 Tenn. Pub. Ch. 428 (2009), Tenn Code Ann. § 39-17-1311(b)(1)(H). (Exhibit Defendant's Brief)
[4] The fact that citizens may have been upset at the sight of Mr. Embody is not relevant to this inquiry. The law allowing the carrying of handguns had been passed by their elected representatives. Further, Defendant's expert's statement, that Embody's weapon was being carried at the "port arms," and that a two and one-half hour investigation was reasonable lacks any credibility because no where in Long's report is there found evidence that Ward knew Embody or of Walsh's present sense impressions. Nor does Long explain why it was impossible to measure the barrel or for the officer to conduct a simple computer check on the Draco via their cars' computers. (Aff. Long, expert to Defendant's Brief). It should be noted that whether the stop was reasonable or not is conclusive. A reasonableness of a search and or seizure is to be resolved by a Court. Hunter v. Bryant, 502 U.S. 224 (1991) Expert testimony may not be considered or the ultimate question of law. Berry v. City of Detroit, 25 F.3d 1342, 1353-54 (6th Cir. 1994)

Embody had a valid permit and that he had encountered him before and did not think his presence in the park previously constituted a threat. (Aff. Lokey, police reports, exhibit to Defendant's Brief) The reason Embody was detained for two and one-half hours was at the request of Ward. (Id.)

Even if the Court rules that Ward's detention was justified, the length of the detention is questionable. Clearly, there is a genuine issue of material fact as to whether the two and one-half hour detention was reasonable and the Defendant's failure to utilize a ruler and a computer to check on the weapon unreasonable. In the case of United States v. Sharpe, 470 U.S. 675 (1985), the United States Supreme Court held that if the police acted unreasonable by failing to recognize and pursue a less intrusive means of investigation, then a detention means an arrest without probable cause. Sharpe, 470 U.S. at 685

Respectfully, there are genuine issues of material fact contained in the record in regards to whether (1) Embody was in fact under arrest, (2) whether that arrest was without probable cause, (3) whether there were grounds for a detention for investigation, and (4) if so, was the length of the detention unreasonable, causing an illegal arrest of Embody, thus summary judgment should be denied.

## IV. CONCLUSION

For the foregoing reasons the Defendant's motion should respectfully be denied.

Respectfully submitted,

/s/ Phillip L. Davidson
Phillip L. Davidson, #6466
2400 Crestmoor Road
Suite 107
Nashville, Tennessee 37215
(615) 386-7115

7

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was delivered by U.S. Mail and/or electronically to

Robert E. Cooper, Jr.
Attorney General and Reporter

Mary M. Bers
Senior Counsel

Dawn M. Jordan
Senior Counsel
PO Box 20207
Nashville, TN 37202-0207

on this date.

        /s/ Phillip L. Davidson
        Phillip L. Davidson