UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| LEONARD S. EMBODY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 3:10-cv-126 |
| | ) | JUDGE HAYNES |
| STEVE WARD, individually, | ) | JURY DEMAND |
| Defendant. | ) | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Embody contends there is a genuine issue of material fact as to whether defendant Park Ranger Steve Ward arrested him without probable cause. (Doc. 22, Plaintiff's Response to Defendant's Motion for Summary Judgment, 12/15/10). However, certain investigative seizures of a person need not be supported by probable cause. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United State v. Hardnett*, 804 F.2d 353, 355-56 (6th Cir. 1986), *cert. denied*, 479 U.S. 1097 (1987). Ward has already established that his actions came fully within the permissible limits of a *Terry* stop. Embody's arguments do not raise any genuine issue of material fact.

1. <u>Ward acted with reasonable suspicion in stopping Embody.</u> Ward testified that an emergency existed until he successfully disarmed Embody. (*See* Deposition of Ward, p. 34). Embody attempts to minimize the emergent nature of the events leading to the stop by arguing that Ranger Joshua Walsh, the first ranger to encounter Embody, knew Embody's weapon was a handgun and that Embody had a handgun permit, and that Embody was not confrontational or threatening to Walsh. (Doc. # 22-2, Plaintiff's Memorandum Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Brief"), p. 1, 12/15/10). During his encounter with

Embody, Ranger Walsh said both: "Technically it's a handgun…,"[1] and "I don't think an AK-47 is a handgun." (Doc. # 21, Notice of Manual Filing of Audio CD ("Audio CD"), 12/3/10). Plaintiff Embody relies too much on remarks by an officer who was dealing on the spot with an unexpected, bizarre encounter on the road with a man in camouflage carrying an AK-47,[2] but with the barrel tip painted orange like a toy. It is more significant in understanding the nature of the events that day that Walsh immediately made an emergency call to his off-duty superior, Steve Ward, and then another emergency call to the Metro Police Department. (Deposition of Joshua Walsh, pp. 7, 8-9; Deposition of Steve Ward, pp. 11, 21, 23).

Similarly, while Ranger Walsh later testified that Embody was not threatening to him or confrontational (deposition of Walsh, pp. 5, 8), it was threatening and confrontational enough just to see Embody with an assault weapon strapped across his chest in the middle of a popular park on a Sunday afternoon just before Christmas. Walsh recalled one visitor who walked by: "The citizen appeared to be threatened, held his hands up, got to the side of the road and asked if that was a real weapon." (Deposition of Walsh, p. 6).

Plaintiff Embody argues that Radnor Lake visitors' reactions to Embody and his weapon, such as the one above, are "irrelevant." (Plaintiff's Responses to Ward's Statement of Material Facts, ¶¶ 10, 12, 16). But State Parks are "for the recreational and cultural use and enjoyment of the people." Tenn. Code Ann. § 11-3-101. Park Rangers have the authority to maintain order in the State Parks for the public welfare. Tenn. Code Ann. § 11-3-107. It is Rangers Steve Ward's

---

[1] Embody appears to conclude that Walsh's statement, "Technically, it's a handgun…," meant that Walsh was conceding the legality of the weapon. However, Embody offers no factual basis for that conclusion.

[2] It was when Embody responded to interrogatories in this case that he disclosed that the weapon was a "Draco." (*See* Deposition of Embody, Exhibit 6, Interrogatories to Plaintiff, Response to Interrogatory No. 7, 9/1/10).

and Joshua Walsh's duty to ensure that Radnor Lake is preserved for the recreational use and enjoyment of the people by maintaining order and protecting the public welfare. That duty arose when an elderly couple beat on Steve Ward's door to tell him about a man with an assault weapon walking on the road, when Ranger Walsh witnessed a visitor raise his hands and step off to the side of the road when encountering Embody, and when various concerned visitors approached Ranger Walsh after they saw Embody with his weapon. (Deposition of Steve Ward, p. 20, Deposition of Joshua Walsh, pp. 5-6, 15). Embody's interest in exercising his rights under the Tennessee "guns in parks" law, Tenn. Code Ann. § 39-17-1311(b)(1)(H), does not make the recreational use and enjoyment of the other people at Radnor Lake, and Steve Ward's duty to protect them in these pursuits, irrelevant.

Likewise, Ranger Steve Ward's one previous encounter with Embody at Radnor Lake on an earlier date does not raise any question about the reasonableness of Ward's felony takedown of Embody on December 20, 2009. (*See* Plaintiff's Brief at 2). Earlier, Embody was carrying a revolver in a holster, easily recognizable as a handgun (Deposition of Embody, p. 43); on December 20, 2009, he was carrying an AK-47. This weapon was unusual for Radnor Lake. Embody did not see any other individuals carrying an AK-47. (Deposition of Embody, p. 78). Ranger Walsh said to Embody, "…[B]ut I don't know why you need it out here." (*See* deposition of Walsh, p. 5; Audio CD).

Steve Ward acted reasonably in stopping Embody. The Sixth Circuit held in another case that it was reasonable for officers to investigate men driving box trucks, wearing SWAT gear, and accompanied by a car built to look like a law enforcement vehicle. *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 827-28 (6th Cir. 2007), *cert. dismissed*, 129 S.Ct. 31 (2008). "In a post 9/11 world, these elements understandably combined to raise

suspicions that Plaintiffs were engaged in terrorist activity." *Id.* It was just as reasonable here for Ward to be suspicious that an individual walking in Radnor Lake dressed in camouflage, and carrying an AK-47 modified to look like a toy was engaged in criminal activity. (*See* deposition of Steve Ward, pp. 5, 9, 11, 22).

    2. <u>The stop came within the permissible limits of a *Terry* stop.</u> There is no litmus test to determine whether a *Terry* investigatory stop has become an arrest; rather, courts decide this question case by case, considering the "the scope and nature of the restraints placed on an individual's liberty. *United States v. Richardson*, 949 F.2d 851, 856 (6th Cir. 1991). Factors indicating an "arrest" include handcuffing the individual, placing him in the back of a police car and transporting him to another location, using physical confinement or other coercion to prevent the detainee from leaving police custody, reading his *Miranda* rights and questioning him. *See Richardson,* 949 F.2d at 857; *United States v. Lopez-Arias*, 344 F.3d 623, 628 (6th Cir. 2003). None of these factors indicating an individual "under arrest" are in this case. Ward's only show of force was confined to the time that Embody had an AK-47 strapped across his chest. Steve Ward never removed Embody from the visitor's center parking lot where he had stopped Embody. He never placed him in a patrol car, or handcuffed him, or compelled him to remain at the scene through use of weapons or bodily force. After Ward patted him down for any other weapons, he allowed Embody to get up and to use his cell phone. (Deposition of Embody, p. 62). While Ward and the Metro Officers required Embody to remain at the scene, they were all calm, courteous, and respectful to him. (Deposition of Embody, pp. 63-64).

    Plaintiff Embody contends that he was getting in his car when Ward stopped him, suggesting Ward should have just let him leave. (Plaintiff's Brief, p. 2). But the Fourth

4

Amendment does not require an officer "to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145 (1972).

Plaintiff Embody also contends that any question about the legality of his weapon could have been resolved by measuring the barrel. (Plaintiff's Brief, p. 6). Ward and the other law enforcement officers had never seen a weapon like this before, and could not tell if it was illegal. (Deposition of Ward, p. 38). Measuring the barrel would not have shed any light on why a fully loaded assault weapon was painted orange on the barrel tip like a toy weapon, or whether Embody had also modified the weapon in any illegal ways.

The length of the stop did not convert this *Terry* investigatory stop into an arrest. The Supreme Court has rejected any hard-and-fast time limit for a permissible *Terry* stop. *United States v. Sharpe*, 470 U.S. 675, 686 (1985). "If the purpose of *Terry* is to be served, police must under certain circumstances must be able to detain the individual longer than the brief time in *Terry* and *Adams* [*v. Williams*, 407 U.S. 143 (1972)]. *Michigan v. Summers*, 452 U.S. 692, 700, n. 12 (1981). The Metro Police Department provided a full sequence of events for the entire time that Embody was stopped. (*See* Motion for Summary Judgment, Exhbit 5: Affidavit of Lokey, Metro Police Department, and attached Police Complaint Investigation).[3] This included times of calls made, time required for supervisors to come at Embody's request, time needed for a detective to be called from another investigation, and time required for the ATF to research the weapon. (*Id.*, "Sequence of Events 12/20/09," copy attached). Ward and the police were both thorough and diligent in their investigation.

---

[3] While courts decide reasonableness of length of detention based on the particular facts of each case, there are examples of other investigatory stops similar in length of time to this case. *See e.g. United States v. Maltais*, 403 F.3d 550, 557 (8th Cir. 2005), *cert. denied*, 546 U.S. 1177 (2006) (two hours, fifty-five minutes); *United States v. Fiqueroa*, 2000 WL 963346, *10 (10th Cir. 7/12/00), *cert. denied,* 531 U.S. 1175 (2001) (two hours); *United States v. Toole*, 2008 WL 2323362, *15 (W.D. N.Y. 2008) (five and a half hours).

5

Defendant Ranger Steve Ward asks the Court to grant his motion for summary judgment and to dismiss him with prejudice.

Respectfully submitted,

ROBERT E. COOPER, JR., BPR # 010934
Attorney General and Reporter

s/Mary M. Bers, BPR # 013159
Senior Counsel
Office of the Attorney General
P. O. Box 20207
Nashville, Tennessee 37202-0207
(615) 741-1845

CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of December, 2010, a copy of the foregoing was filed electronically to Phillip L. Davidson, 2400 Crestmoor Road, Suite 107, Nashville, TN 37215.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Copies will be served by the Court's electronic filing service on the following counsel of record:

s/ Mary M. Bers

6