UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| LEONARD S. EMBODY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:10-cv-126 |
| | ) | JUDGE HAYNES |
| STEVE WARD, individually, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

### *DEFENDANT STEVE WARD'S RESPONSES TO* PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE WHICH PRECLUDE SUMMARY JUDGMENT

1. Park Ranger, Joshua A. Walsh, knew that the weapon Leonard Embody was carrying on December 20th, 2009, was a handgun. (Depo. Walsh, p. 5)

RESPONSE:

Disagree. Ranger Walsh stated, "Technically it's a handgun, but I don't know why you need it out here." (Deposition of Joshua Walsh, p. 5).

But Walsh also testified:
A.   No, sir. I did not believe it was a handgun.

Q.   Well, why did you tell Mr. Embody that you believed it was a handgun?

A.   I said that because I was not going to start a confrontation with him, start an argument about whether it was a handgun. (Deposition of Joshua Walsh, p. 8).

Walsh also testified that he told Embody: "I'm pretty sure an AK-47 is not a handgun." (Deposition of Joshua Walsh, p. 14). *See also* Plaintiff's Response to Statement of Material Facts in Support of Motion for Summary Judgment by Defendant Steve Ward, ¶ 8.

2. On December 20th, 2009, Walsh was familiar with the applicable Tennessee statutes

covering a citizen's right to carry a handgun in a State park. (Depo. Walsh, p. 5)

RESPONSE:

Agree.

3. Walsh knew at the time he encountered Embody at Radnor Lake Park and while he monitored him on the trail that Embody was not threatening anyone. (Depo. Walsh, p. 5)

RESPONSE:

Disagree. Walsh testified:

Q. In fact, a citizen actually came by and asked him about the weapon, didn't he?
A. The citizen walked by. The citizen appeared to be threatened, held his hands up, got to the side of the road and asked if that was a real weapon.
Q. The citizen was joking, wasn't he?
A. No.
[Objection to form.]
Q. You don't actually believe the citizen felt he was threatened, do you?
A. Yes, sir.

4. At no time during the encounter did Walsh feel threatened. (Depo. Walsh, p. 6)

RESPONSE:

Agree.

5. Walsh determined that Embody had a permit to carry the weapon. (Depo. Walsh, pp. 7-8)

RESPONSE:

Agree only that Walsh determined that Embody had a handgun permit. (Deposition of Joshua Walsh, pp. 7-8).

6. Walsh stayed with Embody the whole time he was in the park. (Depo. Walsh, p. 7)

RESPONSE:

Disagree. Ranger Walsh stayed with Embody after their meeting. (Deposition of Joshua Walsh, pp. 6-7).

7. Walsh communicated with Ranger Steve Ward several times during the whole incident. (Depo. Walsh, pp. 7-8)

RESPONSE:

Agree.

8. At no time was Embody ever confrontational. (Depo. Walsh, p. 7)

RESPONSE:

Agree.

9. At the time of this incident, Ranger Steve Ward was trained to know Tennessee law regarding handguns including a citizen's right to carry a handgun in a State park. (Depo. Ward, p. 6)

RESPONSE:

3

Agree.

10. Ward had met Mr. Embody prior to December 20th, 2009. At this previous encounter Ward had determined Embody had a handgun permit and was aware at the time he encountered Embody that he had a legal handgun permit. (Depo. Ward, p. 8)

RESPONSE:

Agree.

11. Ranger Walsh had informed Ward about his previous encounter with Embody that day. (Depo. Ward, p. 11)

RESPONSE:

Agree that Ranger Walsh had told Ranger Ward about Walsh's earlier encounter with Embody on December 20, 2009. (Deposition of Steve Ward, p. 11).

12. Prior to his encountering Embody, Ward had received no information from Walsh that Embody was threatening anyone. (Depo. Ward, p. 12)

RESPONSE:

Agree.

13. When Ward first approached Embody, Mr. Embody was attempting to get in his car. (Depo. Ward, p. 13, Depo. Embody, p. 61)

RESPONSE:

Disagree that Ward knew that Embody was attempting to get in his car. "I'm not aware that he was getting in anything. He was standing out in the parking lot with a weapon on his chest." (Deposition of Steve Ward, p. 14).

14. Ward had encountered Mr. Embody carrying a weapon in the park before. At this previous encounter Mr. Embody had his children with him. He also knew Embody had a permit to carry a weapon. (Depo. Ward, p. 14, Depo. Embody, p. 44)

RESPONSE:

Agree.

15. Before encountering Embody on December 20, 2009, Ward was not aware of any danger posed to citizens or Ranger Walsh by Embody. (Depo. Ward, pp. 16-23)

RESPONSE:

Disagree. Ward testified that when he received a phone call at home from Walsh, it meant it was an emergency. Further, a couple was beating on Ward's door telling him there was a man on the road with an assault rifle. Ward also testified about the tone of Walsh's voice asking what he needed to do. (Deposition of Steve Ward, pp. 23-24).

16. Ward stopped Embody because of citizen safety. (Depo. Ward, p. 18)

RESPONSE:

5

Agree. Ward also stated, "It was officer and visitor safety are what we're concerned about at the time of the stop." (Deposition of Steve Ward, p. 16).

17. Prior to encountering Embody, Ward was informed that the man with Ranger Ward as Mr. Embody. (Depo. Ward, p. 26)

RESPONSE:

[Disagree. Question is not clear.]

18. Walsh stopped Embody by pointing a shot gun at him and telling him to put his weapon on the ground. (Depo. Ward, p. 28)

RESPONSE:

Agree.

19. Embody was under arrest during the whole time he was stopped. (Depo. Ward, p. 32)

RESPONSE:

Disagree. Steve Ward testified:
      Q.    He could have left if he wanted to?
      A.    No, sir.
      Q.    Well, if he couldn't leave, then he was under arrest; wasn't he?
      A.    I never placed him under arrest.
(Deposition of Steve Ward, p. 32).

20. Ward could have told the Metro Police to leave. He could have measured the barrel and let Mr. Embody go. (Depo. Ward, pp. 34-35)

RESPONSE:

Disagree. Ward's testimony at pp. 34-35 does not support this conclusion.
  Q. Well – go ahead. All right. Okay
    But you could have told Metropolitan Police Department to go in – to go anytime that – that you wanted to; right?
  A. No, sir.
(Deposition of Steve Ward, p. 36).

21. At the time of Embody's arrest, Ward disagreed with the law passed by the Legislature. (Depo. Ward, p. 40)

RESPONSE:

Disagree. Ward stated, "I believe the – the law could have been written better." (Deposition of Steve Ward, p. 40).

22. On December 20th, 2009, Embody had a legal right to carry the weapon he had in a State park, a Draco AK47 pistol. The weapon he had at the time was a lawful weapon for which he had a valid permit to carry. (Depo. Ward, pp. 44-45)

RESPONSE:

Disagree with this as any testimony of Steve Ward's. (Deposition of Steve Ward, pp. 44-45). Agree with this as conclusion of the officers' investigation that day.

7

23. Ranger Ward was the officer who eventually allowed Embody to go free. (Depo. Embody, p. 74)

RESPONSE:

Disagree. Steve Ward testified:
    Q. And you're the individual that walked Mr. Embody back to his automobile and gave him his weapon back, correct?
    A. No, sir.
    Q. Who was?
    A. Metro police walked him to his car.
    Q. So –
    A. I went to my vehicle to get the weapon. I brought it over to the weapon – the weapon over to Mr. Embody, and a Metro police officer released the weapon back to him unloaded.
    Q. And you told met Metropolitan Police Department that they were no longer needed; is that correct?
    A. No, sir.
(Deposition of Steve Ward, p. 44-45).
Leonard Embody testified:
    A. Why – the question is messed up, because the police didn't allow me to leave. Ranger Ward allowed me to leave.
    Q. Explain.
    A. Ranger Ward is the one that accompanied me to my car and gave me my handgun back and told me to leave at 7 p.m. that night.
    Q. And that's why you were saying he was the one to allow you to leave?
    A. Correct.
(Deposition of Leonard Embody, p 74).

24. Ranger Ward was the officer who gave Embody his weapon back. (Depo. Embody, p. 74)

RESPONSE:

Disagree. Steve Ward testified: "I went to my vehicle to get the weapon. I brought it over to the weapon – the weapon over to Mr. Embody, and a Metro police officer released the weapon back to him unloaded."
(Deposition of Steve Ward, p. 45).

8

25. Mr. Embody was only exercising his right under Tennessee Law to carry a legal weapon and because he was afraid of being assaulted. (Depo. Embody, pp. 75-81)

RESPONSE:

Agree as consistent with Embody's testimony on pp. 75-81.

26. Mr. Embody refused to sign a citation in lieu of arrest because he had committed no crime. (Depo. Embody, p. 87)

RESPONSE:

Agree only that plaintiff Embody testified that he turned down option of being issued a citation. (Deposition of Leonard Embody, p. 87).

27. After the Metro Police arrived, Embody was compliant and willing to have his weapon seized. (Depo. Ward, p. 34)

RESPONSE:

Agree that plaintiff Embody was compliant. (Deposition of Steve Ward, p. 34).

28. Ward could have taken the weapon to the Park Headquarters and unarmed it. (Depo. Ward, p. 38)

RESPONSE:

Disagree.

9

Respectfully submitted,

ROBERT E. COOPER, JR., BPR # 010934
Attorney General and Reporter

s/Mary M. Bers, BPR # 013159
Senior Counsel
Office of the Attorney General
P. O. Box 20207
Nashville, Tennessee 37202-0207
(615) 741-1845


CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of December, 2010, a copy of the foregoing was filed electronically to Phillip L. Davidson, 2400 Crestmoor Road, Suite 107, Nashville, TN 37215. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Copies will be served by the Court's electronic filing service on the following counsel of record:


s/ Mary M. Bers